IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

RECEIVED & FILED
99 FEB 19 PH 3: 21

UNITED STATES OF AMERICA,
      Plaintiff,

v.

[1] YAMIL H. KOURI PEREZ,
    [COUNTS 1 - 3,5, 7, 9-32,
    and 34]
[2] JEANETTE A. SOTOMAYOR
VAZQUEZ,
    [COUNT 1,4,6,7,8, and 34]
[6] RAFAEL A. RIZEK NASSAR,
    [COUNT 1, 6 and 34]
[7] MILAGROS GARCIA LEON,
    [COUNT 1, 4, 8, and 34]
[8] ARMANDO BOREL BARREIRO,
    [COUNT 1, 5, 7, and 34]
[9] EDGARDO ROSARIO BURGOS,
    [COUNT 1, 33 and 34]
[10] LUIS E. DUBON OTERO,
    [COUNT 1, and 34]
[11] JORGE L. GARIB BAZAIN,
    [COUNT 1, 34 and 35]

    Defendants.

**T H I R D
S U P E R S E D I N G
I N D I C T M E N T**

CRIMINAL NO. 97-091(JAF)

CRIMINAL VIOLATIONS:

18 USC 371
Count 1

18 USC 666
Counts 2 - 7, and 34

18 USC 1512(b)
Count 8

18 USC 1956(a)(1)(B)(i)
Counts 9 - 20

18 USC 1956(a)(1)(B)(ii)
Count 21 - 33

18 USC 982
Count 34

Count 35

**(THIRTY-FIVE COUNTS)**

The Grand Jury charges that:



THIRD SUPERSEDING INDICTMENT
Criminal No. 97-091(JAF)
Page 2

## COUNT I

### Conspiracy to Commit Theft

### Concerning Program Receiving Federal Funds

### 18 USC §371

### GENERAL ALLEGATIONS

1.    At times material to this Third Superseding Indictment, Advanced Community Health Services, Inc., (hereinafter "ACHS"), was a for profit corporation which was incorporated under the laws of the Commonwealth of Puerto Rico on or about August 21, 1987.

2.    At times material to this Third Superseding Indictment ACHS contracted with the Municipality of San Juan, for the purpose of creating, developing, and administering the "Instituto del Sida de San Juan", or the San Juan Aids Institute, (hereinafter "ISSJ"), in conjunction with the Harvard Institute for International Development, (hereinafter "HIID").

3.    At times material to this Third Superseding Indictment, ISSJ was an operational branch of the Municipality of San Juan, dedicated to the comprehensive treatment of persons afflicted with Acquired Immune Deficiency Syndrome, (hereinafter "AIDS"), which was fully administered by ACHS.

4.    On or about January 19, 1988, the ISSJ began its operations as an organization allegedly dedicated to the comprehensive treatment of the AIDS crisis in San Juan.

THIRD SUPERSEDING IND1 .MENT
Criminal No. 97-091(JAF)
Page 3

5.    On or about June 4, 1990, ACHS changed its corporate status to that of a non-profit corporation, in order to facilitate its receipt of federal grants for the research and treatment of AIDS.

6.    In or about January 1989, ACHS began to receive federal grants for various operational objectives connected with ACHS's declared mission to combat the AIDS crisis in San Juan.

7.    Between January 1, 1988 through on or about January 12, 1989, ACHS received approximately $1,206,808.30 from the Municipality of San Juan operating account, which account had received federal funds through the Commonwealth of Puerto Rico Department of Anti-Addiction Services and Health Services and Facilities Administration, and Civil Defense in approximately the following yearly amounts:

| YEAR PAYMENT RECEIVED | AMOUNT RECEIVED IN FEDERAL FUNDS |
|---|---|
| 1988 | $13,320.18 |
| 1989 | $438,491.94 |
| 1990 | $532,222.00 |

8.    Between on or about January 12, 1989, through on or about February 28, 1994, ACHS received approximately sixteen million eighty five thousand four hundred and nine ($16,085,409.00) dollars in federal grants, in approximately the following yearly amounts:

THIRD SUPERSEDING IND.. .MENT
Criminal No. 97-091(JAF)
Page 4

| YEAR PAYMENT RECEIVED | AMOUNT RECEIVED FROM FEDERAL GOVERNMENT |
|---|---|
| 1989 | $609,445.87 |
| 1990 | $657,828.00 |
| 1991 | $4,323,326.00 |
| 1992 | $5,544,219.00 |
| 1993 | $3,813,041.00 |
| 1994 | $1,137,550.00 |

9.   At   all   times   material   to   this   Third   Superseding
Indictment, the defendant, **YAMIL H. KOURI PEREZ**, was a coordinator
for Latin America and the Caribbean for HIID, which was affiliated
to Harvard University, as well as being its principal investigator.

10.  At   all   times   material   to   this   Third   Superseding
Indictment, HIID was an organization affiliated with Harvard
University, which provided consulting services to ACHS and ISSJ, to
assist in the development of a comprehensive AIDS treatment program
in San Juan.

11.  At   all   times   material   to   this   Third   Superseding
Indictment, the defendant, **YAMIL H. KOURI PEREZ**, was a consultant
who participated in the development of ACHS and the ISSJ.   The
defendant, **YAMIL H. KOURI PEREZ**, exerted great influence in the
operation of ACHS and ISSJ, and was consulted regarding its major
decisions.

12. At times material to this Third Superseding Indictment, the defendant, **JEANNETTE A. SOTOMAYOR VAZQUEZ**, was the manager of operations of ACHS and ISSJ. As such, the defendant, **JEANNETTE A. SOTOMAYOR VAZQUEZ**, was responsible for the day to day operations of the ISSJ, including fiduciary responsibility for ensuring the proper management of the ACHS operating account.

13. At times material to this Third Superseding Indictment, **ANGEL L. CORCINO MAURAS,** not indicted herein, was the comptroller for ACHS. As such, he was responsible for supervision of the accounting department at ACHS, including the obligation for the receipt, custody, disbursement and proper management of the funds assigned to ACHS.

14. At times material to this Third Superseding Indictment, **JULIO R. CORCINO MAURAS**, not indicted herein, was an attorney employed by ACHS as a legal advisor for patient rights.

15. At times material to this Third Superseding Indictment, **JUAN E. RIZEK NASSAR**, not indicted herein, was a physician and president of ACHS. **JUAN E. RIZEK NASSAR,** not indicted herein, also contracted with ACHS to establish a quality control department within ISSJ.

16. At times material to this Third Superseding Indictment, the defendant, **RAFAEL A. RIZEK NASSAR**, was a physician who

contracted with ACHS to provide medical oncological services to the ISSJ.

17.  At times material to this Third Superseding Indictment, the defendant, **MILAGROS GARCIA LEON**, was a personnel and payroll officer at ACHS.

18.  At times material to this Third Superseding Indictment, the defendant, **ARMANDO BOREL BARREIRO**, was custodian of property for ACHS and ISSJ.  The defendant, **ARMANDO BOREL BARREIRO**, was also responsible for the development of an in-house laboratory at ACHS.

19.  At times material to this Third Superseding Indictment, the defendant, **EDGARDO ROSARIO BURGOS**, was a senator for the District of Arecibo, Puerto Rico.

20.  At times material to this Third Superseding Indictment, the defendant, **EDGARDO ROSARIO BURGOS**, was Director of Evaluations and Standards at ACHS.

21.  At times material to this Third Superseding Indictment, the defendant, **LUIS E. DUBON OTERO**, was secretary and member of the Board of Directors of ACHS, and was subsequently named president of the Board of Directors of ACHS.

22.  At times material to this Third Superseding Indictment, the defendant, **JORGE L. GARIB BAZAIN**, was president and member of the Board of Director, and was subsequently named Medical Director of ACHS.

23.   At times material to this Third Superseding Indictment, the accounting department at ACHS processed account payables in substantially the following manner:

a.   A check drawn on the operational account of ACHS was prepared when an invoice or bill for services or supplies provided to ACHS and/or ISSJ was received, or upon submission of a check request form requesting payment of a contractual obligation of ACHS and/or ISSJ, in the absence of an invoice or a bill.

b.   A check request form would also, at times, be generated for the purpose of allowing the transfer of funds between various ACHS bank accounts.

c.   After the check had been written, it was submitted for signature to authorized ACHS officials.   Usually, the defendants, **JEANNETTE A. SOTOMAYOR VAZQUEZ**, and **Juan E. Rizek Nassar,** not indicted herein, were the executing officials.

24.   At times material to this Third Superseding Indictment, the following corporations received funds from ACHS and the ISSJ:

| CORPORATION | DATE OF INCORPORATION | RELATIONSHIP WITH ACHS/ISSJ | OFFICERS AND/OR SHAREHOLDERS |
|---|---|---|---|
| Octagon, Inc. | May 7, 1992 | Purchasing agent ACHS and ISSJ | Shareholders: Yamil H. Kouri Perez<br><br>Rafael A. Rizek Nassar |

THIRD SUPERSEDING IND_ _MENT
Criminal No. 97-091(JAF)
Page 8

| CORPORATION | DATE OF INCORPORATION | RELATIONSHIP WITH ACHS/ISSJ | OFFICERS AND/OR SHAREHOLDERS |
|---|---|---|---|
| Advanced Combo Supplies, Inc., also known as Advanced Food Services Institutiona l Food | Feb. 6, 1992 | Contract to sell miscel-laneous items to ACHS/ISSJ | Shareholders: Yamil H. Kouri Perez; Angel L. Corcino Mauras; Julio R. Corcino Mauras; Officers: Angel L. Corcino Mauras, President |
| Pan American Enterprises | 1992 | Creditor of ACHS | Shareholders and Officers: Yamil H. Kouri Perez, President |
| Professional Advisory Inc., aka Professional Resources, Inc. | Feb. 25, 1991 | Contractual | Julio R. Corcino Mauras (President) |
| Panamerican Corporation of Radiology | Nov. 10, 1992 | No Contractual relationship | Yamil H. Kouri Perez (President) |
| Medservices | unknown | Contract to research | Third Parties |
| Fundación Panamericana | unknown | Contract to Provide Aids Prevention and Education | Third Party |
| Las Américas Laboratory and Blood Bank | Dec. 6, 1963 | Contract to Provide Laboratory Services | Rafael A. Rizek Nassar (President) |

THIRD SUPERSEDING IND. .MENT
Criminal No. 97-091(JAF)
Page 9

| CORPORATION | DATE OF INCORPORATION | RELATIONSHIP WITH ACHS/ISSJ | OFFICERS AND/OR SHAREHOLDERS |
|---|---|---|---|
| TMR Diagnostic Imaging, Inc. | Nov. 14, 1991 | Contract to Provide Radiological Services | Yamil H. Kouri Perez (Vice-President) |

25.  At times material to this Third Superseding Indictment, the defendant, **YAMIL H. KOURI PEREZ**, executed a contract pursuant to which he agreed to lend Advanced Combo Supplies, Inc., the sum of $1,000,000.00, to be paid in periodic installments.

26.  At times material to this Third Superseding Indictment, Advanced Combo Supplies, Inc., changed its corporate name to Advanced Food Service, Institutional Food and Supply Distributor, Inc. (hereinafter "Advanced Food").

27.  At times material to this Third Superseding Indictment, the defendant, **YAMIL H. KOURI PEREZ**, managed and controlled Octagon Corporation, and was kept abreast of the daily operations of the company through his representative, defendant **ARMANDO BOREL BARREIRO**.

28.  At times material to this Third Superseding Indictment, the defendant, **YAMIL H. KOURI PEREZ**, owned and controlled Panamerican Corporation of Radiology, (hereinafter "Panamerican"), a corporation operating and existing under the laws of the Commonwealth of Puerto Rico.

29.  At times material to this Third Superseding Indictment, Panamerican maintained asset account number 7560002647 at the Bank and Trust of Puerto Rico, on which the defendant, **YAMIL H. KOURI PEREZ** was an authorized signatory.  Bank statements for this account were mailed to the home address of the defendant, **YAMIL H. KOURI PEREZ**.

30.  At times material to this Third Superseding Indictment, Advanced Food maintained operating account number 7570001402, at the Bank and Trust of Puerto Rico.  Bank statements for this account were mailed to the home address of the defendant, **YAMIL H. KOURI PEREZ**.

31.  At times material to this Third Superseding Indictment, Advanced Food maintained payroll account number 7570001410 and Advanced Combo Supplies maintained account number 203867306, at the Bank and Trust of Puerto Rico, and Banco Popular, respectively. Bank statements for the Bank Trust account were mailed to the home address of the defendant, **YAMIL H. KOURI PEREZ**.

32.  At times material to this Third Superseding Indictment, Hamilton Bank was a federally insured financial institution, which was regulated by the Office of the Comptroller of the Currency, and was located in Miami, Florida.

33. At times material to this Third Superseding Indictment, Southern Bank and Trust (hereinafter "Southern"), was purportedly an off-shore holding company, located in Panamá and Monserrat.

34. At times material to this Third Superseding Indictment, Southern maintained an operating account at Hamilton Bank, account 411454510, (hereinafter "the Southern Account").

35. At times material to this Third Superseding Indictment, the law firm of DUBON and DUBON maintained an operating account at Banco Popular, account number 26-041162, (hereinafter "the Dubon Account").

## THE CONSPIRACY AND ITS OBJECTS

36. From in or about January 12, 1989, through in or about February 1994, at the City of San Juan, in the District of Puerto Rico, and elsewhere, and within the jurisdiction of this Court, the defendants,

> [1] YAMIL H. KOURI PEREZ,
> [2] JEANNETTE A. SOTOMAYOR VAZQUEZ,
> [6] RAFAEL A. RIZEK NASSAR,
> [7] MILAGROS GARCIA LEON,
> [8] ARMANDO BOREL BARREIRO,
> [9] EDGARDO ROSARIO BURGOS,
> [10] LUIS E. DUBON OTERO,
> [11] JORGE L. GARIB BAZAIN,

did knowingly and willfully combine, conspire, confederate, and agree with each other, with ANGEL L. CORCINO MAURAS, JULIO A. CORCINO MAURAS AND JUAN E. RIZEK NASSAR, not indicted herein, and with others known and unknown to the Grand Jury, to commit an

offense against the United States, namely, as agents of an

organization which received benefits in excess of $10,000.00 under

a Federal program involving a grant, or other form of Federal

assistance, in each successive one year period beginning in 1988

through 1994, to knowingly and willfully embezzle, steal, and

obtain by fraud, and without authority knowingly convert to the use

of a person not the rightful owner, and intentionally misapply

property worth at least $5,000.00 owned by such organization, that

is, monies in excess of $2,000,000.00 in program funds, in

violation of Title 18, United States Code, Section 666.

All in violation of Title 18, United States Code, Section 371.

### OBJECT OF THE CONSPIRACY

37. It was the purpose and object of the conspiracy for the

defendants, **YAMIL H. KOURI PEREZ, JEANNETTE A. SOTOMAYOR VAZQUEZ,**

**RAFAEL A. RIZEK NASSAR, MILAGROS GARCIA LEON, ARMANDO BOREL**

**BARREIRO, EDGARDO ROSARIO BURGOS, LUIS E. DUBON OTERO, and JORGE L.**

**GARIB BAZAIN,** together with co-conspirators not indicted herein,

and others known and unknown to the Grand Jury, to use the funds of

ACHS and the ISSJ, for unauthorized personal benefits, and for the

unauthorized personal benefit of others, through a pattern of

deceptive conduct ,and transactions of related corporate entities

of the defendants, designed to create the appearance that the

transactions were legitimate, when in fact, they were nothing more

than a means of concealing the fraudulent nature of the disbursements. The pattern of deceptive conduct was further designed to conceal the fraudulent nature of the transactions and to protect the unlawful conspiracy from detection.

As a result of the unlawful conspiracy, the defendants embezzled, stole and obtained by fraud, in excess of $2,000,000.00 of public funds which were designated for the research and treatment of the AIDS crisis in San Juan.

## MANNER AND MEANS OF THE CONSPIRACY

38. It was a part of the manner and means of the unlawful conspiracy that:

39. ACHS would be converted to a non-profit corporation, in order to improve its ability to qualify for federal grants, and making it eligible for increased amounts of federal funding.

40. The defendants, **YAMIL H. KOURI PEREZ, JEANNETTE A. SOTOMAYOR VAZQUEZ, RAFAEL A. RIZEK NASSAR, MILAGROS GARCIA LEON, ARMANDO BOREL BARREIRO, EDGARDO ROSARIO BURGOS, LUIS E. DUBON OTERO, and JORGE L. GARIB BAZAIN**, would be placed in significant positions within ACHS and ISSJ, which would enable them to manipulate and divert the funds received by ACHS for the research and treatment of AIDS for unauthorized purposes.

41. Corporations under the management and control of the defendants, **YAMIL H. KOURI PEREZ, RAFAEL A. RIZEK NASSAR**, and

**ARMANDO BOREL BARREIRO**, would be created for the purpose of contracting with ACHS, under the guise of offering goods and services to ACHS and the ISSJ.

42. Fictitious debts would be created between ACHS and/or ISSJ, and the corporations controlled by the defendants, in order to create the appearance that the funds paid to these corporations were for bona fide services.

43. The funds paid to these corporations would be used for the personal benefit of the defendants and their related corporate entities, or for the personal benefit of others at the direction of the defendants, for purposes not related to the legitimate objectives of ACHS, including political contributions and the payment of bribes to public officials.

44. Checks would be made payable to third parties who did not render legitimate services to ACHS, and those checks would be cashed by parties other than the payees, in order to divert the funds for purposes not related to the legitimate objectives of ACHS, including political contributions and the payment of bribes to public officials.

45. Contracts purportedly for professional services would be entered into between ACHS and various other individuals, corporate entities and organizations, in order to provide a mechanism to divert ACHS funds for the personal benefit of the defendants and

their related corporate entities, and for the benefit of others at the defendants' direction, including the payment of political contributions and the payment of bribes to public officials.

46.   ACHS checks payable to these corporate entities and organizations would be converted into manager's checks in order to facilitate the negotiability of said checks and their transfer to their ultimate destination.

47.   These manager's checks would be deposited into the Southern account at Hamilton Bank in order to conceal the ultimate destination of these monies.

48.   ACHS checks payable to corporate entities would also be converted to cash at a check cashing business.

49.   Services contracts would be created, and back-dated, in an attempt to justify the services purportedly rendered by these corporations.

50.   The law firm of the defendant Luis E. Dubon Otero, would be paid substantial sums of money in the form of a retainer in the amount of $10,000 a month, for an aggregate total amount approximately of $779,079.51.

51.   ACHS funds were diverted for the purpose of making political contributions and the further purpose of purchasing equipment, motor vehicles, among other items, as unauthorized contributions to political campaigns.

52.   Personal employees of some of the defendants would be
paid with ACHS funds for services provided exclusively to the
defendants in their personal capacity.  These employees appeared on
the ACHS payroll, as if they were ACHS employees which in fact they
were not, in order to conceal the fraudulent nature of those
payments.

53.   Attempts would be made to pressure employees of ACHS to
conceal the existence of fraudulent transactions and/or activities
at ACHS.  Attempts would also be made to "buy" the cooperation and
silence of ACHS employees and others connected, directly or
indirectly to the program.

## OVERT ACTS

54.   In furtherance of the conspiracy and in order to effect
its objects, the defendants, **YAMIL H. KOURI PEREZ, JEANNETTE A.
SOTOMAYOR VAZQUEZ, RAFAEL A. RIZEK NASSAR, MILAGROS GARCIA LEON,
ARMANDO BOREL BARREIRO, EDGARDO ROSARIO BURGOS, LUIS E. DUBON
OTERO, and JORGE L. GARIB BAZAIN**, together with , Angel L. Corcino
Mauras, Julio R. Corcino Mauras, and Juan Rizek Nassar, not
indicted herein, and others known and unknown to the Grand Jury,
committed and caused to be committed the below enumerated acts,
among others, in the District of Puerto Rico and elsewhere:

55.   Between in or about January 1988, and in or about in or
about November 1988, the defendants **YAMIL H. KOURI PEREZ** and **JORGE**

**L. GARIB BAZAIN,** met with a candidate for political office in Puerto Rico, in order to discuss financing for the politician's political campaign.

56. Between in or about January 1988, and in or about November 1988, the defendant, **JORGE L. GARIB BAZAIN,** on at least two occasions, provided substantial sums of monies, as political contributions to a candidate for political office in Puerto Rico.

57. Between in or about January 1988, and in or about November 1988, the defendant **JORGE L. GARIB BAZAIN,** met with a the candidate for political office in Puerto Rico, and offered to provide the politician with a sophisticated video camera and sound equipment.

58. In or about October, 1988, the defendant **JORGE L. GARIB BAZAIN,** caused a video camera to be provided to the political campaign of a candidate for political office in Puerto Rico.

59. In or about October 4, 1988, the defendant, **JEANETTE A. SOTOMAYOR VAZQUEZ,** gave instructions to an employee of the accounting department at ACHS to issue a check in payment of the video camera which had been provided for use in the political campaign.

60. In or about October or November, 1988, the defendants **JEANETTE A. SOTOMAYOR VAZQUEZ** and **JORGE L. GARIB BAZAIN,** attempted to persuade an ACHS contract employee to endorse a check payable to

the contract employee from the ACHS operating account in the approximate amount of $60,000.00, which represented monies substantially in excess of the sums due to the contract employee, in order to allow the defendants to use the excess funds for purposes not connected with the legitimate objectives of ACHS.

61.   In or about November 1988, the defendant **MILAGROS GARCIA LEON**, completed forms necessary to hire an individual purportedly to work at ACHS in the maintenance department.   This individual would in reality be employed exclusively as a housekeeper for the defendant **JORGE L. GARIB BAZAIN** in his personal residence.   This individual shall be hereinafter referred to as the "Garib housekeeper".

62.   Between on or about November 30, 1988, and December 1, 1989, the Garib housekeeper was paid approximately $8,149.12 from ACHS funds in payment of her salary for her housekeeping functions at the personal residence of the defendant **JORGE L. GARIB BAZAIN.**

63.   **Between** on or about May 31, 1990, through on or about October 22, 1990, the defendants **YAMIL H. KOURI PEREZ** and **LUIS E. DUBON OTERO,** caused checks aggregating approximately $35,000.00 to be issued from the ACHS operating account at Banco Popular, to be issued to third parties which had not performed any legitimate services for ACHS and who were not entitled to those funds.

64. Between on or about May 31, 1990, through on or about October 22, 1990, the defendants **YAMIL H. KOURI PEREZ** and **LUIS E. DUBON OTERO**, caused approximately $35,000.00 of ACHS funds to be diverted and used for purposes not connected to the legitimate functions and objectives of ACHS.

65. On or about May 31, 1990, defendant **JEANNETTE A. SOTOMAYOR VAZQUEZ,** caused a check to be written from the ACHS general account, payable to a third party, in the amount of $4,000.00, said check was later endorsed by defendant **LUIS E. DUBON OTERO** and converted to cash.

66. On or about August 28, 1990, defendant **LUIS E. DUBON OTERO,** caused a check to be written from the ACHS general account, payable to a third party, in the amount of $5,000.00, and later caused to convert it to cash.

67. On or about August 28, 1990, defendant **LUIS E. DUBON OTERO,** caused a check to be written from the ACHS general account, payable to a third party, in the amount of $5,000.00, and later caused to convert it to cash.

68. On or about September 25, 1990, defendant **LUIS E. DUBON OTERO,** caused a check to be written from the ACHS general account, payable to a third party, in the amount of $3,000.00, and later caused said check to be endorsed by the Dubon law firm.

69. On or about September 25, 1990, defendant **JEANNETTE A. SOTOMAYOR VAZQUEZ,** caused a check to be written from the ACHS general account, payable to a third party, in the amount of $3,500.00, said check was later endorsed by the Dubon firm.

70. On or about September 25, 1990, defendant **LUIS E. DUBON OTERO,** caused a check to be written from the ACHS general account, payable to a third party, in the amount of $3,500.00, and later caused said check to be endorsed by the Dubon law firm.

71. On or about October 22, 1990, defendant **LUIS E. DUBON OTERO,** caused a check to be written from the ACHS general account, payable to a third party, in the amount of $3,000.00, and later caused said check to be deposited in the Dubon account.

72. On or about November 30, 1990, defendant **LUIS E. DUBON OTERO,** caused a check to be written from the ACHS general account, payable to a third party, in the amount of $2,500.00, defendant **RAFAEL RIZEK NASSAR** caused said check to be endorsed.

73. On or about December 31, 1990, defendant **JEANNETTE A. SOTOMAYOR VAZQUEZ,** caused a check to be written from the ACHS general account, payable to a third party, in the amount of $3,330.00, defendant **RAFAEL RIZEK NASSAR** caused said check to be endorsed.

74. Between on or about October 11, 1991, through on or about May 15, 1992, the defendant **JEANETTE A. SOTOMAYOR VAZQUEZ**, caused approximately $2,951.00 in ACHS funds to be paid to an individual who performed yard maintenance and construction work at her personal residence, but provided no services to ACHS.

75. In or about 1990 and 1991, the defendant **JEANETTE A. SOTOMAYOR VAZQUEZ**, directed at least two full time employees of ACHS to perform maintenance work at properties owned by the defendant, **JEANETTE A. SOTOMAYOR VAZQUEZ**, while the individuals were employees of ACHS and being compensated by ACHS.

76. On or about the following dates, the defendant **YAMIL H. KOURI PEREZ**, together with others known and unknown to the Grand Jury, caused the following ACHS checks to be deposited into the Southern account at Hamilton Bank, among others, as more specifically outlined below:

| CHECK AMOUNT | DATE OF CHECK | PAYEE |
|---|---|---|
| $10,000.00 | October 9, 1991 | Medservices |
| $10,000.00 | November 27, 1991 | Medservices |
| $16,000.00 | March 16, 1992 | Fundación Panamericana |
| $16,000.00 | May 8, 1992 | Fundación Panamericana |
| $11,000.00 | June 22, 1992 | Las Américas Laboratory |
| $ 5,000.00 | July 21, 1992 | Las Américas Laboratory |

77.  On or about February 21, 1991, a co-conspirator not indicted herein, pursuant to instructions received from defendant, **YAMIL H. KOURI PEREZ**, caused a check in the amount of $11,700.00 payable to Professional Resources, Inc. to be converted cash.

78.  On or about September 16, 1992, a co-conspirator  not indicted herein, pursuant to instructions received from defendant, **YAMIL H. KOURI PEREZ**, caused a check in the amount of $2,316.00 payable from the ACHS payroll account to a third party for services not rendered.

79.  On or about September 30, 1992, a co-conspirator not indicted herein, pursuant to instructions received from defendant, **YAMIL H. KOURI PEREZ**, caused a check in the amount of $2,316.00 payable from the ACHS payroll account to a third party for services not rendered.

80.  On or about October 15, 1992, a co-conspirator not indicted herein, pursuant to instructions received from defendant, **YAMIL H. KOURI PEREZ**, caused a check in the amount of $2,316.00 payable from the ACHS payroll account to a third party for services not rendered.

81.  On or about October 30, 1992, a co-conspirator not indicted herein, pursuant to instructions received from defendant, **YAMIL H. KOURI PEREZ**, caused a check in the amount of $2,316.00

payable from the ACHS payroll account to a third party for services not rendered.

82.    On or about November 13, 1992, a co-conspirator not indicted herein, pursuant to instructions received from defendant, **YAMIL H. KOURI PEREZ**, caused a check in the amount of $2,316.00 payable from the ACHS payroll account to a third party for services not rendered.

83.    On or about December 15, 1992, a co-conspirator not indicted herein, pursuant to instruction received from defendant, **YAMIL H. KOURI PEREZ**, caused a check in the amount of $2,316.00 payable from the ACHS payroll account to a third party for services not rendered.

84.    On or about September 17, 1992, the defendant **EDGARDO ROSARIO BURGOS**, met with an advertising executive in order to discuss plans for financing his political campaign.

85.    On or about September 28, 1992, the defendant **JEANNETTE A. SOTOMAYOR VAZQUEZ**, met with an advertising executive at the administration offices of ACHS in order to discuss financing for the political campaign of the defendant **EDGARDO ROSARIO BURGOS**.

86.    At an undetermined date, but approximately between 1992 and 1993, an unindicted co-conspirator received monthly payments in the amount of $5,000.00 as bribe payments at the direction of the defendant **YAMIL H. KOURI PEREZ**. These monies were diverted from

ACHS program funds, earmarked for the treatment and/or research of AIDS

87.   On or about August 5, 1992, a co-conspirator not indicted herein, pursuant to instructions received from defendant, **YAMIL H. KOURI PEREZ**, caused a check to be written from ACHS general account, in the amount of $40,000.00, payable to ACHS Payroll, and caused said check to be deposited in the Advanced Combo Supply account, which account corresponded to Advanced Combo Supplies.

88.   On or about December 21, 1992, a co-conspirator not indicted herein, pursuant to instructions received from defendant, **YAMIL H. KOURI PEREZ**, caused a check to be written form ACHS/Ryan White account, in the amount of $35,000.00, payable to ACHS Payroll, and caused said check to be deposited in the Advance Food Payroll account.

89.   On or about October 20, 1992, a co-conspirator not indicted herein, pursuant to instructions received from defendant, **YAMIL H. KOURI PEREZ**, caused a check to be written from ACHS general account, in the amount of $25,000.00, payable to ACHS Payroll, and caused said check to be deposited in the Advanced Food account.

90.   On or about May 20, 1992, a co-conspirator not indicted herein, pursuant to instructions received from the defendant, **YAMIL H. KOURI PEREZ**, caused a check to be written from ACHS payroll

account, in the amount of $22,000.00, payable to ACHS, and caused

said to be deposited in the Advanced Combo Supply account.

91. In or about 1992, the exact date being unknown to the

Grand Jury, the defendant, **YAMIL H. KOURI PEREZ**, purchased fifty

percent of the shares of Advanced Combo, thereby becoming an owner

of the company.

92. On or about December 1, 1993, the defendant, **YAMIL H.
KOURI PEREZ**, cashed a check in the amount of $5,455.00 from the

Advance Food payroll account.

93. On or about February 9, 1993, a co-conspirator not

indicted herein, pursuant to instructions received from the

defendant, **YAMIL H. KOURI PEREZ**, caused a check to be written from

ACHS general account, in the amount of $20,000.00, payable to ACHS

Payroll, and caused said check to be deposited in the Advanced Food

operating account.

94. On or about January 31, 1994, the defendant, **YAMIL H.
KOURI PEREZ**, caused Pan American Enterprises, Inc., to receive a

check in the amount of $17,000.00 from the Advance Food operating

account.

95. On or about March 9, 1994, a co-conspirator not indicted

herein, pursuant to instructions received from defendant, **YAMIL H.
KOURI PEREZ**, caused a check to be written, in the amount of $924.14

payable to Octagon, and caused said check to be deposited into his personal checking account.

96. On or about October 31, 1990, a co-conspirator not indicted herein, pursuant to instructions received from defendant, **YAMIL H. KOURI PEREZ**, caused a check to be written, in the amount of $9,350.00, payable to a third party.

97. On or about February 11, 1991, a co-conspirator not indicted herein, caused said check to be converted to cash.

98. On or about October 31, 1991, a co-conspirator not indicted herein, pursuant to instructions received from defendant, **YAMIL H. KOURI PEREZ**, caused a check to be written, in the amount of $5,550.00, payable to a third party.

99. On or about January 10, 1992, a co-conspirator not indicted herein, caused the said check to be converted to cash.

100. On or about October 22, 1992, a conspirator not indicted herein, pursuant to instructions from defendant **YAMIL H. KOURI PEREZ,** caused a check to be written, in the amount of $8,000.00, payable to a third party.

101. On or about October 30, 1992, a co-conspirator not indicted herein, caused the said check to be converted to cash.

102. On or about June 3, 1992, a co-conspirator not indicted herein, pursuant to instructions received from defendant, **JEANETTE**

**A. SOTOMAYOR VAZQUEZ,** caused a check to be written, in the amount of $25,000.00 payable to Las Américas Laboratory.

103. On or about June 3, 1992, the defendant, **RAFAEL A. RIZEK NASSAR**, caused said check payable to Las Américas Laboratory, in the amount of $25,000.00, to be deposited into his personal checking account at Banco Popular.

104. On or about January 22, 1993, a co-conspirator not indicted herein, pursuant to instructions received from defendant, **YAMIL H. KOURI PEREZ,** caused a check to be written, in the amount of $8,000.00, payable to Octagon Corporation.

105. On or about January 25, 1993, a co-conspirator not indicted herein, caused the said check to be converted to cash.

106. On or about April 1, 1991, the defendants, **MILAGROS GARCIA LEON** and **JEANNETTE A. SOTOMAYOR VAZQUEZ,** contracted an individual to purportedly work at ACHS, when, in fact, that individual would actually work as a housekeeper at the defendant's, **JEANNETTE A. SOTOMAYOR VAZQUEZ**, residence.   Said individual shall hereinafter be referred to as the "Sotomayor housekeeper."

107. On or about April 15, 1991, the defendants, **MILAGROS GARCIA LEON** and **JEANNETTE A. SOTOMAYOR VAZQUEZ,** caused the Sotomayor housekeeper to execute falsified time cards which claimed

that she worked at ACHS for the pay period between on or about April 1, 1991 through on or about August 15, 1993.

108. On or about April 12, 1991, a co-conspirator not indicted herein, pursuant to instructions received from defendant, **JEANETTE A. SOTOMAYOR VAZQUEZ**, caused a check to be written on the ACHS payroll account, in the amount of $224.37, to pay the Sotomayor housekeeper.

109. On or about April 12, 1991, the defendant, **JEANNETTE A. SOTOMAYOR VAZQUEZ**, caused a check to be signed, which check was written on the ACHS payroll account, in the amount of $224.37, to pay the Sotomayor housekeeper.

110. On or about January 15, 1992, the defendants, **MILAGROS GARCIA LEON** and **JEANNETTE A. SOTOMAYOR VAZQUEZ**, caused the Sotomayor housekeeper to execute falsified time cards which claimed that she worked at ACHS for the pay period between on or about January 1, 1992 through on or about January 15, 1992.

111. On or about January 15, 1992, a co-conspirator not indicted herein, pursuant to instructions received from defendant, **JEANETTE A. SOTOMAYOR VAZQUEZ,** caused a check to be written on the ACHS payroll account, in the amount of $299.73, to pay the Sotomayor housekeeper.

112. On or about January 15, 1992, the defendant, **JEANNETTE A. SOTOMAYOR VAZQUEZ**, caused a check to be signed, which check was written on the ACHS payroll account, in the amount of $299.73, to pay the Sotomayor housekeeper.

113. On or about January 15, 1993, the defendants, **MILAGROS GARCIA LEON** and **JEANNETTE A. SOTOMAYOR VAZQUEZ**, caused the Sotomayor housekeeper to execute falsified time cards which claimed that she worked at ACHS for the pay period between on or about January 1, 1993 through on or about January 15, 1993.

114. On or about January 14, 1993, a co-conspirator not indicted herein, pursuant to instructions received from defendant, **JEANETTE A. SOTOMAYOR VAZQUEZ,** caused a check to be written on the ACHS payroll account, in the amount of $361.53, to pay the Sotomayor housekeeper.

115. On or about January 14, 1993, the defendant, **JEANNETTE A. SOTOMAYOR VAZQUEZ**, caused a check to be signed, which check was written on the ACHS payroll account, in the amount of $361.53, to pay the Sotomayor housekeeper.

116. On or about January 31, 1994, the defendants, **MILAGROS GARCIA LEON** and **JEANNETTE A. SOTOMAYOR VAZQUEZ**, caused the Sotomayor housekeeper to execute falsified time cards which claimed

that she worked at ACHS for the pay period between on or about January 16, 1994 through on or about January 31, 1994.

117. On or about January 28, 1994, a co-conspirator not indicted herein, pursuant to instructions received from defendant, **JEANETTE A. SOTOMAYOR VAZQUEZ,** caused a check to be written on the ACHS payroll account, in the amount of $762.24, to pay the Sotomayor housekeeper.

118. On or about January 28, 1994, the defendant, **JEANNETTE A. SOTOMAYOR VAZQUEZ,** caused a check to be signed, which check was written on the ACHS payroll account, in the amount of $762.24, to pay the Sotomayor housekeeper.

119. On or about September 24, 1992, a co-conspirator not indicted herein, pursuant to instructions from the defendant, **YAMIL H. KOURI PEREZ,** caused two checks, each in the amount of $25,000.00, to be written on the ACHS general account, payable to Octagon Corporation.

120. On or about September 25, 1992, the defendant, **ARMANDO BOREL BARREIRO,** caused two checks, in the respective amounts of $25,000.00 to be deposited into the Octagon Corporation account.

121. On or about September 28, 1992, the defendant, **ARMANDO BOREL BARREIRO,** caused two checks to be written from the Octagon Corporation account, payable to himself, in the respective amounts

of $7,142.85, and $3,290.50, which the defendant, **ARMANDO BOREL BARREIRO**, caused to be converted to cash.

122. On or about September 29, 1992, the defendant, **ARMANDO BOREL BARREIRO**, caused a check to be written from the Octagon Corporation account, payable to himself, in the amount of $8,343.85, which the defendant, **ARMANDO BOREL BARREIRO**, caused to be converted to cash.

123. On or about October 1, 1992, the defendant, **ARMANDO BOREL BARREIRO**, caused four checks to be written from Octagon Corporation account, payable to Advance Food Service, in the respective amounts, of $7,598.55, $8,677.30, $6,993.50, and $7,953.45, which the defendant, **ARMANDO BOREL BARREIRO**, caused to be deposited in the Advance Food Service operating account.

124. On or about February 21, 1992, the defendant, **JEANNETTE A. SOTOMAYOR VAZQUEZ,** and **JUAN E. RIZEK NASSAR,** not indicted herein, caused a check to be written from the ACHS general account, payable to a third party, in the amount of $10,000.00, for professional services dedicated to construction work performed at the residence of the defendant, **RAFAEL A. RIZEK NASSAR**.

125. On or about May 26, 1992, the defendant, **JEANNETTE A. SOTOMAYOR VAZQUEZ,** and **JUAN E. RIZEK NASSAR,** not indicted herein, caused a check to be written from the ACHS general account, payable

to a third party, in the amount of $10,000.00, for professional services dedicated to construction work performed at the residence of the defendant, **RAFAEL A. RIZEK NASSAR**.

126. On or about May 18, 1993, the defendant, **RAFAEL A. RIZEK NASSAR**, required that the third party write a check payable to ACHS, in the amount of $10,000.00, and in exchange provided the third party with a check for the same amount drawn on the personal account of the defendant, **RAFAEL A. RIZEK NASSAR**.

127. On or about October 22, 1992, the defendant, **JEANNETTE A. SOTOMAYOR VAZQUEZ**, and **JUAN E. RIZEK NASSAR**, not indicted herein, caused a check to be written from the ACHS general account, payable to a third party, in the amount of $4,250.00, for professional services.

128. On or about October 22, 1992, a third party, caused the said check in the amount of $4,250.00 to be converted to cash and turned over the monies to **ANGEL L. CORCINO MAURAS**.

129. On or about October 22, 1992, the defendant, **JEANNETTE A. SOTOMAYOR VAZQUEZ**, and **JUAN E. RIZEK NASSAR**, caused a check to be written from the ACHS general account, payable to a third party, in the amount of $6,000.00, for professional services.

130. On or about October 22, 1992, a third party, caused the said check to be converted to cash and turned over the monies to **ANGEL L. CORCINO MAURAS.**

131. On or about October 22, 1992, the defendant, **JEANNETTE A. SOTOMAYOR VAZQUEZ,** and **JUAN E. RIZEK NASSAR,** not indicted herein, caused a check to be written from the ACHS general account, payable to a third party, in the amount of $4,250.00, for professional services.

132. On or about October 22, 1992, a third party, caused said check to be converted to cash and turned over the monies to Angel L. Corcino Mauras not indicted herein.

133. On or about October 22, 1992, a co-conspirator not indicted herein, required that a third party convert into cash $27,750.00 in checks from the ACHS general account.

134. On or about October 26, 1992, a co-conspirator not indicted herein, pursuant to instructions from the defendant, **YAMIL H. KOURI PEREZ,** provided the latter with $27,750.00 in cash of ACHS funds.

135. In or about August 1993, the defendants, **YAMIL H. KOURI PEREZ, EDGARDO ROSARIO BURGOS, LUIS E. DUBON OTERO, RAFAEL RIZEK NASSAR,** and Juan Rizek Nassar, not indicted herein, discussed the necessity of holding a press conference in order to dispel

suspicion that there had been diversion of ACHS funds for personal

and other benefits.

136. Counts Two through Thirty Four of this Third Superseding

Indictment are incorporated by reference herein and designated as

over acts of this conspiracy.

## COUNT II

### Theft Concerning Program Receiving Federal Funds

## 18 USC § 666(a)(1)(A)
## 18 USC § 2

1.    Paragraphs one (1) through eleven (11), and Twenty-four

(24) through thirty-five(35), of the General Allegations are

realleged and incorporated herein by reference.

2.    From on or about May 7, 1992, through in or about March

9, 1994, at the City of San Juan, in the District of Puerto Rico,

and elsewhere, and within the jurisdiction of this Court, the

defendant,

### [1] YAMIL H. KOURI PEREZ,

the defendant herein, being an agent of an organization as this

term is defined in Title 18, United States Code, Section 666(d)(1),

aided and abetted by others known and unknown to the Grand Jury,

did knowingly, willfully, unlawfully, and intentionally misapply

and embezzle, steal, obtain by fraud, or otherwise without

authority convert to their own personal use, without being the

THIRD SUPERSEDING IND__TMENT
Criminal No. 97-091(JAF)
Page 35

rightful owners, property valued at $5,000.00 or more, that is,
approximately $270,252.16, which was owned by and under the care,
custody, and control of Advanced Community Health Services
("ACHS"), an organization that received in a one year period
benefits in excess of $10,000.00 under a Federal program through a
contract, grant, subsidy, loan, guarantee, insurance, or any form
of Federal assistance.

All in violation of Title 18, United States Code, Sections
666(a)(1)(A) and 2.

## COUNT III

### Theft Concerning Program Receiving Federal Funds

**18 USC § 666(a)(1)(A)**
**18 USC § 2**

1.   Paragraphs one (1) through eleven (11), twenty-three
(23), twenty-four (24), twenty-five (25), and thirty-one (31) of the
General Allegations are realleged and incorporated herein by
reference.

2.   From on or about October 15, 1992, through in or about
January 25, 1993, at the City of San Juan, in the District of
Puerto Rico, and elsewhere, and within the jurisdiction of this
Court, the defendant,

**[1] YAMIL H. KOURI PEREZ,**

the defendant herein, aided and abetted by others known and unknown to the Grand Jury, being an agent of an organization as this term is defined in Title 18, United States Code, Section 666(d)(1), aiding and abetting each other, did knowingly, willfully, unlawfully, and intentionally misapply and embezzle, steal, obtain by fraud, or otherwise without authority convert to their own personal use, without being the rightful owners, property valued at $5,000.00 or more, that is, approximately $40,900.00, which was owned by and under the care, custody, and control of Advanced Community Health Services ("ACHS"), an organization that received in a one year period benefits in excess of $10,000.00 under a Federal program through a contract, grant, subsidy, loan, guarantee, insurance, or any form of Federal assistance.

All in violation of Title 18, United States Code, Sections 666(a)(1)(A) and 2.

THIRD SUPERSEDING INL. .TMENT
Criminal No. 97-091(JAF)
Page 37

## COUNT IV

### Theft Concerning Program Receiving Federal Funds

### 18 USC § 666(a)(1)(A)
### 18 USC § 2

1.   Paragraphs one (1) through eight (8), twelve (12), seventeen(17), twenty-three(23), and twenty-four(24), of the General Allegations are realleged and incorporated herein by reference.

2.   From on or about May 15, 1992, through in or about January 31, 1994, at the City of San Juan, in the District of Puerto Rico, and elsewhere, and within the jurisdiction of this Court, the defendants,

**[2] JEANNETTE A. SOTOMAYOR VAZQUEZ,**
**and**
**[4] MILAGROS GARCIA LEON,**

the defendants herein, being agents of an organization as this term is defined in Title 18, United States Code, Section 666(d)(1), aiding and abetting each other, did knowingly, willfully, unlawfully, and intentionally misapply and embezzle, steal, obtain by fraud, or otherwise without authority convert to their own personal use, without being the rightful owners, property valued at $5,000.00 or more, that is, approximately $20,956.29, which was owned by and under the care, custody, and control of Advanced Community Health Services ("ACHS"), an organization that received

THIRD SUPERSEDING INDICTMENT
Criminal No. 97-091(JAF)
Page 38

in a one year period benefits in excess of $10,000.00 under a

Federal program through a contract, grant, subsidy, loan,

guarantee, insurance, or any form of Federal assistance.

All in violation of Title 18, <u>United States Code</u>, Sections

666(a)(1)(A) and 2.

## COUNT V

### Theft Concerning Program Receiving Federal Funds

#### 18 USC § 666(a)(1)(A)
#### 18 USC § 2

1.    Paragraphs one (1) through eleven (11), eighteen (18),

twenty-three (23),twenty-four (24), and twenty-seven (27) of the

General Allegations are realleged and incorporated herein by

reference.

2.    On or about September 24, 1992, at the City of San Juan,

in the District of Puerto Rico, and elsewhere, and within the

jurisdiction of this Court, the defendant,

**[1] YAMIL H. KOURI PEREZ and**
**[5] ARMANDO BOREL BARREIRO,**

the defendant herein, being an agent of an organization as this

term is defined in Title 18, <u>United States Code</u>, Section 666(d)(1),

aided and abetted by others known and unknown to the Grand Jury,

did knowingly, willfully, unlawfully, and intentionally misapply

and embezzle, steal, obtain by fraud, or otherwise without

authority convert to their own personal use, without being the rightful owners, property valued at $5,000.00 or more, that is, approximately $50,000.00, which was owned by and under the care, custody, and control of Advanced Community Health Services ("ACHS"), an organization that received in a one year period benefits in excess of $10,000.00 under a Federal program through a contract, grant, subsidy, loan, guarantee, insurance, or any form of Federal assistance.

All in violation of Title 18, United States Code, Sections 666(a)(1)(A) and 2.

## COUNT VI

### Theft Concerning Program Receiving Federal Funds

#### 18 USC § 666(a)(1)(A)
#### 18 USC § 2

1.    Paragraphs one (1) through eight (8), twelve (12), sixteen (16), twenty-three (23), and twenty-four (24)of the General Allegations are realleged and incorporated herein by reference.

2.    On or about May 26, 1992, at the City of San Juan, in the District of Puerto Rico, and elsewhere, and within the jurisdiction of this Court,

[2] JEANNETTE A. SOTOMAYOR VAZQUEZ,
and
[3] RAFAEL A. RIZEK NASSAR,

the defendants herein, being agents of an organization as this term

is defined in Title 18, United States Code, Section 666(d)(1),

aiding and abetting each other, did knowingly, willfully,

unlawfully, and intentionally misapply and embezzle, steal, obtain

by fraud, or otherwise without authority convert to their own

personal use, without being the rightful owners, property valued at

$5,000.00 or more, that is, approximately $10,000.00, which was

owned by and under the care, custody, and control of Advanced

Community Health Services ("ACHS"), an organization that received

in a one year period benefits in excess of $10,000.00 under a

Federal program through a contract, grant, subsidy, loan,

guarantee, insurance, or any form of Federal assistance.

All in violation of Title 18, United States Code, Sections

666(a)(1)(A) and 2.

## COUNT VII

### Theft Concerning Program Receiving Federal Funds

**18 USC § 666(a)(1)(A)**
**18 USC § 2**

1.    Paragraphs one (1) through twelve (12), eighteen (18),

twenty-three (23) through thirty-five (35), of the General

Allegations are realleged and incorporated herein by reference.

2.   On or about October 22, 1992, at the City of San Juan, in the District of Puerto Rico, and elsewhere, and within the jurisdiction of this Court, the defendants,

**[1] YAMIL H. KOURI PEREZ,**
**[2] JEANNETTE A. SOTOMAYOR VAZQUEZ,**
**and**
**[5] ARMANDO BOREL BARREIRO,**

the defendants herein, being agents of an organization as this term is defined in Title 18, United States Code, Section 666(d)(1), aiding and abetting each other, did knowingly, willfully, unlawfully, and intentionally misapply and embezzle, steal, obtain by fraud, or otherwise without authority convert to their own personal use, without being the rightful owners, property valued at $5,000.00 or more, that is, approximately $27,750.00, which was owned by and under the care, custody, and control of Advanced Community Health Services ("ACHS"), an organization that received in a one year period benefits in excess of $10,000.00 under a Federal program through a contract, grant, subsidy, loan, guarantee, insurance, or any form of Federal assistance.

All in violation of Title 18, United States Code, Sections 666(a)(1)(A) and 2.

THIRD SUPERSEDING IND. [MENT
Criminal No. 97-091(JAF)
Page 42

## COUNT VIII

### OBSTRUCTION OF CRIMINAL INVESTIGATIONS BY BRIBERY

#### 18 USC §1512(b)
#### 18 USC § 2

Between on or about the February 12, 1997, through on or about
March 1, 1997, at the City of San Juan, in the District of Puerto
Rico, and elsewhere, and within the jurisdiction of this Court,

**[2] JEANNETTE A. SOTOMAYOR VAZQUEZ,**
**and**
**[4] MILAGROS GARCIA LEON,**

the defendants herein, aiding and abetting each other, did
knowingly attempt to corruptly persuade another person, known to
the Grand Jury with the intent to influence the testimony of said
person in an official proceeding, and with the intent to cause said
person to withhold testimony from an official proceeding, and
hinder and delay the communication to a law enforcement officer of
the United States of information relating to the commission of a
Federal offense, in violation of Title 18, United States Code,
Sections 1512(b) and 2.

## COUNTS IX THROUGH XX
### Laundering of Monetary Instruments

### 18 USC 1956(a)(1)(B)(i)

1.    Paragraphs one (1) through eleven (11), and twenty-three (23) through thirty-five(35), of the General Allegations are realleged and incorporated herein by reference.

2.    On or about the dates enumerated below, in the District of Puerto Rico and elsewhere, and within the jurisdiction of this Court,

### [1] YAMIL H. KOURI  PEREZ,

the defendant herein, aided and abetted by others known and unknown to the Grand Jury, did knowingly and willfully conduct and attempt to conduct financial transactions affecting interstate and foreign commerce, as more specifically described below, which involved the proceeds of a specified unlawful activity, that is,    theft concerning programs receiving Federal funds, in violation of Title 18, United States Code, Section 666,  knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity and that while conducting and attempting to conduct such financial transactions knew that the property involved in the financial transactions, that is, monetary instruments, in the amounts set forth below, represented the proceeds of some form of unlawful activity.

THIRD SUPERSEDING IND  .MENT
Criminal No. 97-091(JAF)
Page 44

| COUNT | MONETARY INSTRUMENT | DATE OF FINANCIAL TRANSACTION | DOLLAR AMOUNT | FINANCIAL INSTITUTION |
|---|---|---|---|---|
| NINE | MANAGER'S CHECK | JANUARY 21, 1993 | $5,000.00 | HAMILTON BANK |
| TEN | MANAGER'S CHECK | JANUARY 21, 1993 | $5,000.00 | HAMILTON BANK |
| ELEVEN | MANAGER'S CHECK | JULY 12, 1993 | $5,000.00 | HAMILTON BANK |
| TWELVE | MANAGER'S CHECK | JULY 12, 1993 | $5,000.00 | HAMILTON BANK |
| THIRTEEN | MANAGER'S CHECK | JANUARY 21, 1993 | $8,000.00 | HAMILTON BANK |
| FOURTEEN | MANAGER'S CHECK | JANUARY 21, 1993 | $8,000.00 | HAMILTON BANK |
| FIFTEEN | MANAGER'S CHECK | JULY 12, 1993 | $8,000.00 | HAMILTON BANK |
| SIXTEEN | MANAGER'S CHECK | JULY 12, 1993 | $8,000.00 | HAMILTON BANK |
| SEVENTEEN | MANAGER'S CHECK | JUNE 17, 1993 | $5,000.00 | HAMILTON BANK |
| EIGHTEEN | MANAGER'S CHECK | JUNE 17, 1993 | $5,000.00 | HAMILTON BANK |
| NINETEEN | MANAGER'S CHECK | OCTOBER 21, 1993 | $8,000.00 | HAMILTON BANK |
| TWENTY | MANAGER'S CHECK | OCTOBER 22, 1993 | $8,000.00 | HAMILTON BANK |

All in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.

## COUNT XXI THROUGH XXXII
### Laundering of Monetary Instruments

### 18 USC 1956(a)(1)(B)(ii)

1.    Paragraphs one (1) through eleven (11), and twenty-three (23) through thirty-five (35) of the General Allegations are realleged and incorporated herein by reference.

2.    On or about the dates enumerated below, in the District of Puerto Rico, and elsewhere, and within the jurisdiction of this Court,

### [1] YAMIL H. KOURI PEREZ,

the defendant herein, aided and abetted by others known and unknown to the Grand Jury, did knowingly and willfully conduct and attempt to conduct financial transactions affecting interstate and foreign commerce, as more specifically described below, which involved the proceeds of a specified unlawful activity, that is, theft concerning programs receiving Federal funds, in violation of Title 18, United States Code, Section 666, knowing that the transactions were designed in whole and in part to avoid a transaction reporting requirement under Federal law and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transaction, that is, monetary instruments, in the amounts more specifically described below, represented the proceeds of some form of unlawful activity.

THIRD SUPERSEDING INDICTMENT
Criminal No. 97-091(JAF)
Page 46

| COUNT | MONETARY INSTRUMENT | DATE OF FINANCIAL TRANSACTION | DOLLAR AMOUNT | FINANCIAL INSTITUTION |
|-------|---------------------|------------------------------|---------------|----------------------|
| TWENTY ONE | MANAGER'S CHECK | JANUARY 21, 1993 | $5,000.00 | HAMILTON BANK |
| TWENTY TWO | MANAGER'S CHECK | JANUARY 21, 1993 | $5,000.00 | HAMILTON BANK |
| TWENTY THREE | MANAGER'S CHECK | JULY 12, 1993 | $5,000.00 | HAMILTON BANK |
| TWENTY FOUR | MANAGER'S CHECK | JULY 12, 1993 | $5,000.00 | HAMILTON BANK |
| TWENTY FIVE | MANAGER'S CHECK | JANUARY 21, 1993 | $8,000.00 | HAMILTON BANK |
| TWENTY SIX | MANAGER'S CHECK | JANUARY 21, 1993 | $8,000.00 | HAMILTON BANK |
| TWENTY SEVEN | MANAGER'S CHECK | JULY 12, 1993 | $8,000.00 | HAMILTON BANK |
| TWENTY EIGHT | MANAGER'S CHECK | JULY 12, 1993 | $8,000.00 | HAMILTON BANK |
| TWENTY NINE | MANAGER'S CHECK | JUNE 17, 1993 | $5,000.00 | HAMILTON BANK |
| THIRTY | MANAGER'S CHECK | JUNE 17, 1993 | $5,000.00 | HAMILTON BANK |
| THIRTY ONE | MANAGER'S CHECK | OCTOBER 22, 1993 | $8,000.00 | HAMILTON BANK |
| THIRTY TWO | MANAGER'S CHECK | OCTOBER 22, 1993 | $8,000.00 | HAMILTON BANK |

All in violation of Title 18, United States Code, Sections 1956(a)(B)(ii) and 2.

## COUNT XXXIII
## Theft Concerning Programs Receiving Federal Funds

### 18 USC 666

Between on or about February 1, 1993 through on or about February 25, 1994, in the District of  Puerto Rico, and within the jurisdiction of this Court,

### [6] EDGARDO ROSARIO BURGOS,

the defendant herein, being an agent of an organization as this term is defined in Title 18, United States Code, Section 666(d)(1), did knowingly, willfully, unlawfully, and intentionally misapply and embezzle, steal, obtain by fraud, and otherwise convert to his own personal use, without being the rightful owner, property valued at $5,000.00 or more, that is, approximately $9,382.02, which was owned by or under the care, custody, and control of ACHS, an organization that received benefits in excess of $10,000.00 under a Federal program, through a contract, grant, subsidy, loan, guarantee, insurance, or any form of Federal Assistance.

All in violation of Title 18, United States Code, Section 666(a)(1)(A).

## COUNT XXXIV

### FORFEITURE - TITLE 18 § 982

### Program Fraud and Money Laundering

1.   As a result of a conviction of Counts 9 through 33 of this Third Superseding Indictment, which are incorporated herein by reference, defendants **YAMIL H. KOURI PEREZ, JEANNETTE A. SOTOMAYOR VAZQUEZ, RAFAEL A. RIZEK NASSAR, MILAGROS GARCIA LEON, ARMANDO BOREL BARREIRO, EDGARDO ROSARIO BURGOS, LUIS E. DUBON OTERO,** and **JORGE L. GARIB BAZAIN** shall forfeit to the United States the following property:

a.   All right, title, and interest in any and all property involved in each offense in violation of Title 18, United States Code, Section 1956, or conspiracy to commit such offense, for which the defendant is convicted, and all property traceable to such property, including the following: 1) all money or other property that was the subject of each transaction, transportation, transmission or transfer in violation of Section 1956(a)(1);   2) all commissions, fees and other property constituting proceeds obtained as a result of those violations; and 3) all property used in any manner or part to commit or to facilitate the commission of those violations; including but not limited to the following:

ONE URBAN LOT #3371, LOCATED AT 1713 GERANIO ST., URB. SAN FRANCISCO, SAN JUAN, PR, MORE FULLY DESCRIBED AT THE PROPERTY REGISTRY FOR THE COMMONWEALTH OF PUERTO RICO AS FOLLOWS:

URBANA: Solar radicado en el Reparto San Francisco del Barrio Monacillos de Rio Piedras, hoy Capital de Puerto Rico, que se marca con el número 7 en el bloque "I" del plano de inscripción, con una cabida superfical de 1200.40 metros cuadrados, colindando por el: OESTE: su frente, en una distancia de 36.35 metros con la Calle Geranio; ESTE: su fondo, en una distancia de 27.11 metros con el solar #6 del bloque "I" del plano de inscripción propiedad de Sein Realty Company, Inc.; SUR: Su derecha entrando, en una distancia de 36.40 metros con el solar #9 del bloque "I" del plano de inscripción propiedad de Sein Realty Company, Incorporado, separado por una acera o sendero; NORTE: su izquierda entrando, en una distancia de 39.21 metros con el solar #5 del bloque "I" del plano de inscripción propiedad de Sein Realty Company, Inc. (Folio 57 del tomo 94, Finca #3371).

Propietario Registral: Rafael A. Rizek y Alma Rincón Arzuaga.

b.   The sum of **$2,279,153.42**, that is, the total amount of money involved in each offense, or conspiracy to commit such offense, for which the defendant is convicted. If more than one defendant is convicted of an offense, the defendants so convicted are jointly and severally liable for the amount involved in such offense.

2.   Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), each defendant shall forfeit substitute property, up to the value of the amount described in paragraph 1, if, by any act or omission

of the defendant, the property described in paragraph 1, or any portion thereof, cannot be located upon the exercise of due diligence; has been transferred, sold to or deposited with a third party; has been placed beyond the jurisdiction of the court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty; including but not limited to the following substitute property:

**ONE RESIDENTIAL LOT, LOCATED AT 19 BUTTERFIELD RD, LEXINGTON, MA, MORE FULLY DESCRIBED AS FOLLOWS:**

A certain parcel of land with the buildings and improvements thereon situated in Lexington, Middlesex County, Massachusetts, being shown as Lot 10A on a plan entitled "Plan of Land in Lexington, Mass.", dated September 12, 1990, prepared by the BSC Group - Bedford, Inc., recorded with Middlesex South District Deeds in Book 21173, Page 394. Containing 55,176 square feet of land, according to said plan.
(Book 21173, Page 394.)

Owners: Yamil H. Kouri & Elena Kouri.

**ONE RESIDENTIAL LOT, LOCATED AT 120-122 SW 79th AVE., MIAMI, FLORIDA, MORE FULLY DESCRIBED AS FOLLOWS:**

Lot 22 and 23, and the North 15 Feet of Lot 21, in Block 8, of FLAGAMI THIRD ADDITION, according to the Plat thereof as recorded in Plat Book 17, at Page 59 of the Public Records of Dade County, Florida.
(Book 17, Page 59.)

Owners: Yamil H. Kouri & Elena del Pino de Kouri.

ONE URBAN LOT #2120, LOCATED AT 1 STA. ANASTASIA ST.,
URB. EL VIGIA, CUPEY, PR, MORE FULLY DESCRIBED AT THE
PROPERTY REGISTRY FOR THE COMMONWEALTH OF PUERTO RICO AS
FOLLOWS:

URBANA: Solar #1 del plano de la Urbanización El Vigía,
ubicado en el barrio Cupey de Rio Piedras, Puerto Rico,
con una cabida superficial de 2,913.96 metros cuadrados,
colindando por el: NORTE: con area dedicada a uso público
a una distancia de 66.705 metros dedicados a uso público;
SUR: con terreno de Norris E. Deliz, en una distancia de
67.03 metros y 8.20 metros adicionales; ESTE: con la
calle #2 de la Urbanización El Vigía en una distancia de
59.80 metros; OESTE: con terrenos de Gabriel D. Gonzalez
Couvertier, en una distancia de 28.79 metros.
(Folio 122 del tomo 55, Finca #2120).

Propietario Registral:   José Luis Alicea Reyes y
Jeannette Awilda Sotomayor Vázquez.


ONE URBAN LOT, LOCATED AT 9306 LYNFIELD DR., TAMPA,
FLORIDA 36151, MORE FULLY DESCRIBED AS FOLLOWS:

Lot 135, Block 1 of TIMBERLANE SUBDIVISION UNIT NO. 8-B,
as per map of plat thereof as recorded in Plat Book 57 on
Page 34 of the Public Records of HILLSBOROUGH County,
Florida.

Owner: Jeannette E. Alicea.


ONE URBAN LOT #3371, LOCATED AT 1713 GERANIO ST., URB.
SAN FRANCISCO, SAN JUAN, PR, MORE FULLY DESCRIBED AT THE
PROPERTY REGISTRY FOR THE COMMONWEALTH OF PUERTO RICO AS
FOLLOWS:

URBANA: Solar radicado en el Reparto San Francisco del
Barrio Monacillos de Rio Piedras, hoy Capital de Puerto
Rico, que se marca con el número 7 en el bloque "I" del
plano de inscripción, con una cabida superfical de
1200.40 metros cuadrados, colindando por el: OESTE: su
frente, en una distancia de 36.35 metros con la Calle
Geranio; ESTE: su fondo, en una distancia de 27.11 metros

con el solar #6 del bloque "I" del plano de inscripción
propiedad de Sein Realty Company, Inc.; SUR: Su derecha
entrando, en una distancia de 36.40 metros con el solar
#9 del bloque "I" del plano de inscripción propiedad de
Sein Realty Company, Incorporado, separado por una acera
o sendero; NORTE: su izquierda entrando, en una distancia
de 39.21 metros con el solar #5 del bloque "I" del plano
de inscripción propiedad de Sein Realty Company, Inc.
(Folio 57 del tomo 94, Finca #3371).

Propietario Registral: Rafael A. Rizek y Alma Rincón
Arzuaga.


**ONE URBAN LOT, LOCATED AT 13990 SW MIAMI, FLORIDA, MORE
FULLY DESCRIBED 18, TERRACE, AS FOLLOWS:**

Lot 13, in Block 2 of BELKYS SUBDIVISION, according to
the Plat thereof as recorded in Plat Book 129 at Page 87
of the Public Records of Dade County, Florida.

Owners: Armando Borel & Maria Elena Borel.


**ONE RURAL LOT #10113, LOCATED AT B-30 RIDGEWOOD DR.,
URB. TORRIMAR, GUAYNABO, PR, MORE FULLY DESCRIBED AT
THE PROPERTY REGISTRY FOR THE COMMONWEALTH OF PUERTO
RICO AS FOLLOWS:**

RURAL: Solar marcado con el #30 del bloque 'B' de la
Urbanización Torrimar radicada en los barrios Juan
Domingo y Pueblo Viejo de Guaynabo, Puerto Rico, con un
área superficial de 1187.41 metros cuadrados, en lindes
por el NOROESTE: con solar #29 del bloque 'B' en 28.37
metros; NORESTE: con solar #31 del bloque 'B' en 40.58
metros; SURESTE:  con la calle #8 en 30.00 metros;
SUROESTE: con la calle #3, en 40.58 metros.  Este solar
es de forma rectangular y su esquina sur está suavizada
con una curva.
(Finca # 10,113, folio 167, tomo 124 de Guaynabo)

Propietario Registral:  Los esposos Luis E. Dubón, Jr. y
Mirta Arraiza-de Dubón.

THIRD SUPERSEDING INDICTMENT
Criminal No. 97-091(JAF)
Page 53

---

ONE URBAN LOT #8917, LOCATED AT APARTMENT E-5, COND.
COSTA DORADO, DORADO DEL MAR, DORADO, PR, MORE FULLY
DESCRIBED AT THE PROPERTY REGISTRY FOR THE COMMONWEALTH
OF PUERTO RICO AS FOLLOWS:

URBAN:  PROPIEDAD HORIZONTAL:  Apartamento #E-5 que forma
parte de la urbanización Villa de Costa Dorada I,
localizada en el Barrio Pueblo Viejo del término
municipal de Dorado, de forma rectangular con 3
habitaciones en 2 niveles con área total construida de
1942.17 pies cuadrados, equivalentes a 180.34 metros
cuadrados; una terraza de 270.55 pies cuadrados;
equivalentes a 25.13 metros cuadrados; un almacén de
28.45 pies cuadrados, equivalentes a 2.64 metros
cuadrados, y un balcón de 96.23 pies cuadrados,
equivalentes a 8.94 metros cuadrados.  La entrada
principal está localizada en la parte central del
apartamento subiendo del primer piso por una escalera,
pasando por un pasillo hasta un balcón y de ahí al
interior.  Está localizado en el edificio 'E' del régimen
y ocupa parte del segundo y tercer nivel.  Colindando por
el NORTE: en una distancia de 24'10" con área común; SUR:
en una distancia de 24'10" con área común; ESTE: en una
distancia de 50'7" con el apartamento E-8 y área común;
OESTE: en una distancia de 42'3" con el apartamento #E-4.
Este apartamento tiene un balcón que da a la entrada del
apartamento, tiene closet de almacenaje, cocina, sala,
comedor, medio baño y terraza en su primer nivel.  Tiene
una escalera interior que da acceso al segundo nivel
donde se encuentran 3 habitaciones con closet y 2 baños.
Estacionamiento: le corresponden dos(2) espacios, # 78
y # 80.
(Finca # 8917, folio 275, tomo 180 de Dorado)

Propietario Registral:  Los esposos LUIS EUGENIO DUBÓN-
OTERO, también conocido como LUIS E. DUBÓN, JR. y MIRTA
ISABEL ARRAIZA-CATONI, también conocida como MIRTA A.
DUBÓN.


ONE URBAN LOT #38616, LOCATED AT 12-E MALAGA ST., URB. VISTA
MAR, CAROLINA, PR, MORE FULLY DESCRIBED AT THE PROPERTY
REGISTRY FOR THE COMMONWEALTH OF PUERTO RICO AS FOLLOWS:

URBAN:  "Solar localizado en Vistamar Marina Development,
situada en el Barrio Sabana Abajo de Carolina, marcado

THIRD SUPERSEDING IN. [MENT
Criminal No. 97-091(JAF)
Page 54

con el #12 del bloque 'E', con un área de 1171.29 metros
cuadrados, colindando por el NORTE: con el solar #13,
distancia de 36.91 metros; SUR:  con el solar #11,
distancia de 36.97 metros; ESTE: con la calle Malaga,
distancia 5.19 metros y un arco de 20.94 metros y con
5.22 metros; OESTE: con Amazonas Main Channel, distancia
de 29.00 metros.
(Finca # 38,616, folio 101, tomo 800 de Carolina I)

Propietario Registral:  Los esposos JORGE GARIB-BARZAIN
y CARMEN MARGARITA GURREA-ROSAS".

## COUNT XXXV

### False Declarations Before Grand Jury

18 USC § 1623

1. On or about the 18th day of February, 1999, in the District of Puerto Rico, **JORGE L.**

**GARIB BAZAIN**, while under oath and testifying in a proceeding before Grand Jury 97-1, a Grand

Jury of the United States in the District of Puerto Rico, knowingly did make a false material

declaration, that is to say:

2. At the time and place aforesaid the grand jury was conducting an investigation to

determine whether violations of Title 18, United States Code, Sections 371, 666, 1512 and 1956 had

been committed, and to identify the persons who had committed, caused the commission of, and

conspired to commit such violations; it was material to the said investigation that the grand jury

ascertain if **JORGE L. GARIB BAZAIN** had ever given moniesand/or equipment or anything of

value for political contributions to a political candidate.

3. At the time and place alleged, **JORGE L. GARIB BAZAIN** appearing as a witness under

oath at a proceeding before the grand jury knowingly made the following declaration in response to

questions with respect to the material matter alleged in paragraph II as follows:

THIRD SUPERSEDING IN.    'MENT
Criminal No. 97-091(JAF)
Page 55

A.    Q.: I ask you if you ever gave money for politcal contributions for his campaign in 1988?.

A.: Never in my entire life have I given [ political candidate] any type of money whatsoever.

B.    Q.: Did you ever take amounts of amoney in excess of $200,000.00 to [ political candidate] for his political campaign in 1988?

A.: No, that's not correct.

C.    Q.: Now sir, did you ever recall having been in a meeting with (an independent contractor) and Jeannette Sotomayor in which both of you showed him a check for $60,000.00 in lieu of payment for his services, he stated that it was not the correct amount, that in fact what ACHS owed him was less, and he was advised by you to go ahead and endorse the check, take amount owed to him and the excess to be given to you?

A.: No that's incorrect, I've never been in a meeting wheter that happened or anything similar to that ever happened, and it was not my job to pay Mr .(the independent contractor), and I never paid Mr. Mr. (the independent contractor) for anything,. Moreover, I don't even know how many payments were made to Mr .(the independent contractor).

D.    Q.: Now sir, do you ever recall lending this video camera that was purchased by ACHS for an excess of $19,000.00, lending that video camera to [political candidate] for his political campaign in 1988?

A.: I tell you again, I don't even know what camera you're talking about. And if I don't know what camera you're talking about how can I know what

THIRD SUPERSEDING INDICTMENT
Criminal No. 97-091(JAF)
Page 56

camera you're talking about in relation to Mr.[political candidate]. And even

if that camera existed, I don't even know what camera you're talking about.

4.    When in truth and in fact, as the defendant **JORGE L. GARIB BAZAIN** then well

knew, said information was false.

The aforesaid underscored testimony of **JORGE L. GARIB BAZAIN**, as he then and there

well knew and belived, was false in that the defendant **JORGE L. GARIB BAZAIN**, did in fact

give monies and equipment to a political candidate for the office of Mayor of San Juan.

All in violation of Title 18, United States Code, Section 1623.

A TRUE E

FOREP

GUILLERMO GIL
UNITED STATES ATTORNEY

JORGE E. VEGA-PACHECO
ASSISTANT UNITED STATES ATTORNEY
CHIEF, CRIMINAL DIVISION

MARIA A. DOMINGUEZ VICTORIANO
ASSISTANT UNITED STATES ATTORNEY
Dated:  February 19, 1999